**Ayoub–Farid Michel SAAB, Fadi Michel Saab, Plaintiffs–Appellants,**

v.

**CITIBANK, N.A., Defendant–Appellee.**

**Docket No. 01–9417.**

United States Court of Appeals, Second Circuit.

Oct. 16, 2002.

Blair C. Fensterstock, Fensterstock & Partners LLP, New York, NY, for plaintiffs-appellants.

Brad S. Karp, Paul Weiss Rifkind Wharton & Garrison (Andrew Tauber and John Tortorella, on the brief) New York, NY, for defendant-appellee.

Present OAKES, CABRANES, Circuit Judges, and LORETTA A. PRESKA, District Judge.*

**468**

SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and hereby is AFFIRMED.

Plaintiffs-appellants Ayoub–Farid Michel Saab and Fadi Michel Saab ("plaintiffs" or "Saabs"), timely appeal from the District Court's Decision and Order entered November 8, 2001, which granted defendant-appellee's motion for summary judgment. On September 8, 2000, the Saabs filed suit against defendant-appellant Citibank, N.A. ("defendant" or "Citibank"), alleging that Citibank failed to use its best efforts, on behalf of itself and its affiliate Saudi American Bank ("SAMBA"), to effectuate the placement of investments in the Golden Cedar Club Project ("the Project"), a real estate development owned by the Saabs to be built outside of Beirut, Lebanon. *See Saab v. Citibank, N.A.,* 2001 WL 1382577 (S.D.N.Y.2001) at *1. The plaintiffs are brothers who are citizens of Lebanon and residents of Cyprus, who maintain residences and bank accounts in England. *Id.* They allege actual and constructive fraud, breach of fiduciary duty, inducement to or participation in breach of fiduciary duty, intentional and negligent misrepresentation, breach of oral contract, promissory estoppel, tortious interference with contractual relations and economic advantage, and negligent supervision, arising from a failed $62.5 million private placement to finance the Project.

The Placement Agreement entered into by the Saabs and SAMBA made SAMBA and its affiliates in the U.K. and Switzerland the exclusive global agents (except for the United States) for the Saabs for the Project. Compl. ¶¶ 24, 29. On September 16, 1994, the Placement Agreement was signed by plaintiffs and SAMBA. In January 1995, SAMBA created a merchant Banking Group headed by Michael Baker,

and the Project was shifted to this group, which caused more delays, and marketing did not begin until June. Compl. ¶¶ 41, 44. Efforts to complete the placement ended approximately two months later. Compl. ¶ 45.

In 1997, plaintiffs filed suit against SAMBA in London for breach of contract. SAMBA moved for dismissal, arguing that the contract was governed by Saudi Arabian law. *Saab & Another v. Saudi American Bank,* 1 W.L.R. 1861, 1863 (1999). In response to a motion to dismiss on the basis of *forum non conveniens,* plaintiffs argued that the principal breach was attributable to the English office of SAMBA and that they had close personal connections to the forum (*e.g.,* residences, bank accounts, and a daughter educated in England). *Saab,* 1 W.L.R. at 1881–82. They alleged that England was more convenient for the witnesses, many of whom reside in England or were British nationals. The English court agreed and denied SAMBA's motion. *Id.* On April 12, 2000, the English suit against SAMBA was settled.

The plaintiffs thereafter filed this suit in the Southern District of New York on September 8, 2000, asserting a fact pattern similar to that of the English suit, with virtually identical claims against Citibank as had been made against SAMBA in the English suit.

Plaintiffs now appeal from the District Court's Decision and Order entered November 8, 2001, granting defendant's motion to dismiss on *forum non conveniens* grounds. The District Court applied the private and public interest factors laid out by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), for district courts to consider when deciding a motion to dismiss on *forum non conveniens* grounds. *Saab,* 2001 WL 1382577 at *3.

On appeal, plaintiffs raise the concern that the statute of limitations may have run on some or all of their claims against Citibank. Defendant has expressly agreed to accept the English court's jurisdiction and to waive any statute of limitations defenses it may have in an English forum with respect to plaintiffs' claims in this action. Plaintiffs also raise the issue of whether witnesses under Citibank's control will be made available in an English court. The defendant has agreed to make all witnesses and documents available to plaintiffs as required by an English court, and expressly stated that James Collins, the Managing Director and Chief Executive of SAMBA during the events at issue, former Vice President of Citibank, and the only resident of the United States, has agreed to appear in an English forum.

We affirm the judgment of the District Court on the basis, in part, of Citibank's waiver of any statute of limitations defenses available in an English forum regarding plaintiffs' claims in this action; the representations regarding Collins' willingness to appear in an English forum; and Citibank's willingness to make available witnesses and documents in an English forum, and otherwise substantially for the reasons stated by the District Court in its Decision and Order of November 8, 2001, *see Saab v. Citibank, N.A.,* 2001 WL 1382577 (S.D.N.Y.2001).